UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTINA M. G., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:23-cv-00835-MG-JRS |
| ) | |
| MARTIN J. O'MALLEY Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

In October 2015, Plaintiff Christina G. applied for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") from the Social Security Administration ("SSA"), alleging a disability onset date of August 3, 2015. [Filing No. 12 at 3.] Her applications were initially denied in February 2016, and upon reconsideration in May 2016, [Filing No. 8-3 at 24-25, 52-53]. A hearing was conducted in January 2018 and her claims were denied in April of 2018. [Filing No. 8-2 at 13, 32}.

In May of 2020, the district court remanded the ALJ's decision. [Filing No. 8-9 at 31.] The ALJ conducted a hearing in October of 2020 before issuing a decision denying the claims. [Filing No. 8-9 at 73.] The Appeals Council granted review and remanded the claims in October of 2021. [Filing No. 8-9 at 81.] In May of 2022, Administrative Law Judge Marc Jones (the "ALJ") conducted a hearing. The ALJ issued an opinion denying the claims in June of 2022 and the Appeals Council denied Plaintiff's request for review. [Filing No. 8-8 at 20.]

On May 15, 2023, Christina G. filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

1

The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Filing No. 9.] For the reasons set forth below, the Court **AFFIRMS** the ALJ's decision denying Christina G. benefits.

## I.
### STANDARD OF REVIEW[1]

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ (and the Appeals Council) applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does

---

[1] The regulations governing disability determinations for DIB under Title II and SSI under Title XVI are identical in virtually all relevant respects unless otherwise noted. The Court need not include parallel citations unless it notes a distinction between the two sets of regulations.

"determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Christina G. was 41 years old on the date of her alleged onset of disability. [Filing No. 8-8 at 40.] Christina G.'s original application alleges that she can no longer work due to degenerative disc disease of the lower back, neck nerve damage, carpal tunnel, and osteoarthritis in her right knee.[2] [Filing No. 8-3 at 2, 17.]

The ALJ and the Appeals Council followed the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520(a)(4) and concluded that Christina G. was not disabled. Specifically, the ALJ and Appeals Council found as follows:

- At Step One, Christina G. had not engaged in substantial gainful activity[3] since the alleged onset date, August 3, 2015. [Filing No. 8-9 at 61.]

---

[2] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

- At Step Two, Christina G. has the following severe impairments: carpal tunnel syndrome, degenerative disc disease of the cervical and lumbar spine, obesity and osteoarthritis of the bilateral knees. [Filing No. 8-9 at 61.]

- At Step Three, Christina G. did not have an impairment or combination of impairments that meets or medically equals the severity of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). [Filing No. 8-9 at 63].

- After Step Three but before Step Four, the ALJ found Christina G. has the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) as she is able to lift and/pr carry 20 pounds occasionally and 10 pounds frequently, except: the claimant is able to sit, stand or walk for no more than 30 minutes at any one time or more than four hours in an eight-hour workday for each, is unable to climb ladders ropes or scaffolds or crawl, can occasionally climb ramps and stairs, balance, stoop, kneel and crouch, can frequently reach, handle and finger with her bilateral upper extremities and must avoid all exposure to hazards such as unprotected heights, vibration, wet, slippery surfaces or dangerous or uneven terrain. [Filing No. 8-9 at 64.]

- At Step Four, relying on the testimony of the VE and considering Michelle E.'s RFC, the ALJ determined that Christina G. is unable to perform any past relevant work as a housekeeping assistant or fast-food worker. [Filing No. 8-9 at 72.]

- At Step Five, relying on the VE's testimony and considering Christina G.'s age, education, work experience, and RFC, the ALJ determined there are jobs existing in significant numbers in the national economy that she could perform, such as office helper, mail clerk, and storage rental clerk. [Filing No. 8-9 at 73.]

## III.
### DISCUSSION

Christina G. argues that the ALJ erred by: (1) failing to provide an explanation as to how he arrived at the RFC, particularly the sit/stand option and (2) failing to adequately assess Christina G.'s subjective symptoms.

**A. Christina G.'s Subjective Symptoms Were Adequately Assessed**

The ALJ found Christina G.'s allegations and complaints were not consistent with the objective medical evidence. [Filing No. 8-8 at 37.] Christina G. lobs volley after volley of arguments at the ALJ's analysis of her subjective symptoms.

She points to October 2020 and May 2022 hearing transcripts where she testified she can't work a full workweek and explained the extreme pain and recuperation that even one full day of work requires. [Filing No. 8-8 at 81-85, 112-119.][4] She argues the ALJ assigned too much importance to her daily activities: her ability to complete simple chores, see friends, spend time with her grandchild and manage her finances does not mean she can sustain full time employment. [Filing No. 12 at 21-22.] She argues that the ALJ ignored her employer's statement that she called off work nine times in ten months (during her part time, three day a week employment). [Filing No. 12 at 22.] She takes issue with the ALJ's statement that she can walk unassisted with an occasionally antalgic gait, [Filing No. 8-8 at 37], and the ALJ's treatment of her cane usage. [Filing No. 12 at 24.] Christina G. painstakingly reviews her hearing testimony narrating her difficulty getting through the days and doing normal housework. [Filing No. 12 at 27.] She also argues that she discontinued physical therapy because it stopped working, or never adequately worked, and that any abatement of symptoms from pain medication was not such that she can work full time. [Filing No. 12 at 29-30.]

The Commissioner believes the ALJ reasonably discredited Christina G.'s subjective symptoms against the weight of the objective medical evidence. For one, the Commissioner clarifies that the ALJ was not interjecting his own opinion of whether the cane was necessary or required a prescription but adopting Dr. Koerber's statement that it was not necessary. [Filing No. 13 at 11; Filing No. 8-8 at 36-37. Filing No. 8-7 at 171.] The ALJ only reasonably determined "that Plaintiff had not accurately described the need for walking assistance." [Filing No. 13 at 11.] The Commissioner argues that Christina G.'s post-hoc argument that physical therapy wasn't

---

[4] Christina G. meticulously and extensively presents the record evidence in her brief, which evidence will be discussed only generally here.

helping doesn't mean the ALJ couldn't weigh her cancelled appointments in his analysis. If her symptoms were so bad, she should or would have complied with her physical therapy treatment. [Filing No. 13 at 11-12.] The Commissioner argues that the note from Plaintiff's employer wasn't strong evidence because the employer didn't say *why* Plaintiff was absent 9 times in 10 months, much less attribute the absence to medical condition(s). [Filing No. 13 at 10.]

The Commissioner stresses that even if the ALJ could have done a better job at contrasting Christina G.'s subjective symptoms, that doesn't mean his subjective symptom analysis was patently wrong. [Filing No. 13 at 10.] And the ALJ described the limitations Christina G. alleged "and noted admitted activities that tended to conflict with those allegations" which was enough for the minimal articulation standards. [Filing No. 13 at 9.] The Commissioner points out that here, the daily activities of shopping and caring for two pets contradicts her self-prescribed limitations of lifting 5 pounds and walking for 10 minutes at a time. [Filing No. 13 at 9.] The Commissioner argues that Plaintiff didn't present a single opinion from a treatment provider that corroborated her account of her limitations. [Filing No. 13 at 5.]

The ALJ was not patently wrong in his analysis contrasting Christina G.'s subjective symptoms with the record evidence.

"[A]lthough it is appropriate for an ALJ to consider a claimant's daily activities when evaluating their credibility [ ] this must be done with care. We have repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). In *Roddy*, the ALJ wrongly emphasized Plaintiff's ability to perform household tasks. There, the ALJ's conclusion was particularly baffling where Plaintiff "strugg[led] to complete even the simplest and least strenuous of household activities." *Id.* at 635. She couldn't

7

clean a single room of her mobile home, couldn't sweep and mop on the same day, and had a friend living with her to help with household chores. She was not able to play through a card game without alleviating her back pain. *Id.* The ALJ "said only that, by taking over-the-counter medications, Roddy was able to remain self-sufficient and complete household chores, albeit taking longer to do so." *Id.* at 639.

However, an ALJ is "not forbidden from considering statements about a claimant's daily life. In fact, agency regulations instruct that, in an assessment of a claimant's symptoms, the evidence includes descriptions of daily-living activities." *Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020) (finding the ALJ appropriately weighed Plaintiff's daily-living activities in denying her benefits). Thus, the ALJ may not equate daily activities to an ability to work full-time. However, the ALJ may consider Plaintiff's "activities to determine whether her symptoms were as severe and limiting as she alleged." *Id.* at *593. That is what the ALJ did here.

The ALJ concluded that, ["a]fter considering the claimant's allegations and complaints, the undersigned finds that her allegations are not consistent with the objective evidence." [Filing No. 8-8 at 37.] Although he evaluated her daily activities as support for discrediting the extremity of her reported symptoms, he didn't rely on her daily activities alone in this analysis. He also evaluated Dr. Koerber's notes and contrasted them to her subjective symptoms. Regarding cane usage, the statements the ALJ made do not discredit her cane use because it was not "prescribed" by a physician. Rather, the ALJ notes Dr. Koerber said she didn't use a cane at the appointment and that it didn't seem to be medically necessary. [Filing No. 8-8 at 36]. The ALJ did not err in considering Dr. Koerber's notes in his subjective symptom analysis.

Plaintiff then takes issue with the review of symptoms (ROS) reports and that the ALJ failed to consider the employer's statement. First, not incorporating one statement from her

8

employer that did not provide a reason for, or further comment on, her absences is not the same as disregarding "an entire line of contrary evidence and [ ] testimony that supports it." [Filing No. 14 at 6.] Second, the parties disagree about whether the ALJ correctly analyzed the ROS reports (largely containing Plaintiff's medical records from September 2020 to May 2022). Defendant says the ALJ reasonably found Plaintiff's subjective reports of extreme symptoms unpersuasive in light of largely routine medical exams in the two years before the hearing. [Filing No. 13 at 6.] Plaintiff says the ROS notes did not accurately portray her complaints. For instance, in August 2021, she reported chronic pain and asthma, but the ROS notes she said she had no shortness of breath or wheezing and no muscle aches or joint pain. [Filing No. 14 at 3; Filing No. 8-13 at 587.] She also made a medical visit for shortness of breath, but the ROS notes say she wasn't experiencing any shortness of breath. [Filing No. 8-13 at 587.]

As for the ALJ, he goes into great detail regarding the Plaintiff's examination notes and treatment, not only in the two years preceding the hearing but beginning in March of 2015. [Filing No. 8-8 at 31.] The discussion targeted towards the recent medical examinations conducted after May of 2020—and their lack of remarkability—was largely contained to discussion of her carpal tunnel and her ability to perform work at the light exertional level. [Filing No. 8-8 at 37-38.] The ALJ does not include or rely on the ROS reports Plaintiff cites as containing contradictory notes about her shortness of breath or breathing issues. Because the ALJ did not base his reasoning off these notes, his reasoning—which is well-documented—is not flawed. And even reasoning that incorporated these notes would not automatically be clear error—it is far from clear to the Court that these small mentions of shortness of breath would change the totality of his analysis or decision on her subjective symptoms.

The ALJ appropriately weighed Christina G.'s daily activities—not as evidence that she can work full-time, but in discrediting the severity of her subjective symptoms.

### B. The RFC Sit/Stand Limitation was Adequately Supported

Christina G. argues the ALJ did not adequately establish a basis for one of the RFC limitations: finding that Plaintiff could not sit, stand, or walk for more than 30 minutes at a time. "The ALJ never explains his basis for the limitation to sit, stand or walk for no more than 30 minutes at any one time." [Filing No. 12 at 32.] The Commissioner argues the RFC sit/stand limitation was based on Dr. Koerber's opinion that Plaintiff could sit, stand, or move about for no more than 30 minutes at any time or more than 4 hours total in an 8-hour workday. [Filing No. 13 at 12; Filing No. 8-8 at 36-37.] The Commissioner points out that Plaintiff offers no evidence supporting a greater sit/stand limitation, and that the RFC may rely on assessments of non-examining state-agency physicians. *Rice v. Barnhart*, 384 F.3d at 363, 370 (7th Cir. 2004).

Christina G.'s argument fails. The ALJ's reasoning is easily traceable. The ALJ's sit/stand limitation was supported by his analysis of Dr. Koerber's 2016 consultative examination, which opined a 30-minute sit/stand limitation and which the ALJ gave great weight. [Filing No. 8-8 at 36.] Further, the ALJ discussed Christina G.'s 2021 visit(s) with Frankfort Primary Care, which provider noted "claimant walked with a normal gait, that her extremities displayed full strength and coordination, with no signs of swelling . . . ." [Filing No. 8-8 at 36.] The law Christina G. cites applies where an ALJ altogether fails to account for or explain an RFC limitation. *Diaz v. Berryhill*, 2:17-cv-314, 2018 WL 4627218, at *8 (N.D. Ind. Sept. 27, 2018) (no explanation for sit/stand calculation); *Williams v. Berryhill*, 2017 WL 3130763, at *8 (N.D. Ill. July 24, 2017) (no explanation of what evidence supported the sit/stand limitation).

Further, Christina G.'s argument that her cane usage supersedes or contradicts the 2016 examination is not compelling. While "a cane does not require a prescription," *Parker v. Astrue*, 597 F.3d 920 (7th Cir.2010), that she uses one does not outweigh the explanation and support that the ALJ did provide for the RFC limitation:

> While the claimant testified that she is able to walk for 10 minutes without stopping and can sit for 30 minutes at a time, the record indicates that she has longitudinally been able to walk unassisted with only an occasionally antalgic gait.

[Filing No. 8-8 at 37.]

The undersigned finds that the ALJ provided adequate support for the 30-minute sit/stand limitation. Christina G.'s disagreement does not provide the undersigned with the basis to remand on this issue because he can identify the evidence that supported the ALJ's RFC limitation.

## IV.
### CONCLUSION

For the reasons detailed above, the Court **AFFIRMS** the ALJ's decision denying Christina G. benefits.

Date: 9/12/2024

                                              Mario Garcia
                                              United States Magistrate Judge
                                              Southern District of Indiana

**Distribution via ECF to all counsel of record**